IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No.: 1:22-CV-00987

| | |
|---|---|
| JESSICA GOLDEN a/k/a JESSE GOLDEN, EVA PEPAJ, LINA POSADA, TIFFANY TOTH GRAY and CIELO JEAN 'CJ' GIBSON, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL GOLF DISTRIBUTORS, LLC d/b/a MIRAGE and ISABELLA ADKINS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Jessica Golden a/k/a Jesse Golden, Eva Pepaj, Lina Posada, Tiffany Toth Gray, and Cielo Jean 'CJ' Gibson (collectively, "Plaintiffs"), file this Complaint against National Golf Distributors, LLC d/b/a Mirage and Isabella Adkins (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Mirage located in Greensboro, North Carolina ("Mirage" or the "Club").

2.     As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's

- 1 -

image for commercial purposes; b) violation of each Plaintiffs common law right of privacy - misappropriation; c) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; d) defamation; and e) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, defendant National Golf Distributors, LLC operating under the laws of the state of North Carolina, operates Mirage, which is located at 6428-A-Burnt Poplar Road, Greensboro, North Carolina 27409.

8.      According to publicly available records, defendant Isabella Adkins is an individual operating under the laws of the state of North Carolina, who is a Managing Member of National Golf Distributors, LLC.

9.      Venue is proper in the United States District Court for the Middle District of North Carolina because Defendants' principal place of business is located in Greensboro, North Carolina.

10.     A significant portion of the alleged causes of action arose and accrued in Greensboro, North Carolina and the center of gravity for a significant portion of all relevant events

alleged in this complaint is predominately located in Greensboro, North Carolina.

## PARTIES

*Plaintiffs*

11.     Plaintiff Jessica Golden a/k/a Jesse Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

14.     Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

15.     Cielo Jean 'CJ' Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

16.     Defendant National Golf Distributors, LLC is a limited liability company formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, National Golf Distributors, LLC operated Mirage in Greensboro, North Carolina.

17.     Service of process may be perfected upon Defendant National Golf Distributors, LLC by serving the registered agent for service of process, Isabella Adkins, at 1711 Willow Wick Drive, Greensboro, North Carolina 27408.

18.     Defendant Isabella Adkins is a Managing Member of National Golf Distributors, LLC who herself, upon information and belief, was the natural person who directed, supervised,

- 3 -

participated in, and is responsible for the wrongful acts and omissions complained of herein.

19.     Service of process may be perfected upon Isabella Adkins by serving her as an individual Defendant at 1711 Willow Wick Drive, Greensboro, North Carolina 27408.

**FACTUAL ALLEGATIONS**

20.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

23.     In the case of each Plaintiff, this apparent claim was false.

24.     Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

25.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

26.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which

- 4 -

each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

27.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

*Plaintiffs' Individual Backgrounds and Careers*

28.     Plaintiff Golden is a successful model and business woman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

29.     That we know of, Golden is depicted in the photo in Exhibit "A" to promote Mirage on its Facebook page. This Image was intentionally altered to make it appear that Golden was either a stripper working at Mirage, that she endorsed Mirage, or that she was otherwise associated or affiliated with Mirage.

30.     Golden has never been employed at Mirage, has never been hired to endorse Mirage, has never been otherwise associated or affiliated with Mirage, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Plaintiff Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and

- 5 -

film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

32.     That we know of, Pepaj is depicted in the photos in Exhibit "B" to promote Mirage on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Mirage, that she endorsed Mirage, or that she was otherwise associated or affiliated with Mirage.

33.     Pepaj has never been employed at Mirage, has never been hired to endorse Mirage, has never been otherwise associated or affiliated with Mirage, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

34.     Plaintiff Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

35.     That we know of, Posada is depicted in the photos in Exhibit "C" to promote Mirage on its Facebook page. These Images were intentionally altered to make it appear that Posada was either a stripper working at Mirage, that she endorsed Mirage, or that she was otherwise associated or affiliated with Mirage.

36.     Posada has never been employed at Mirage, has never been hired to endorse Mirage, has never been otherwise associated or affiliated with Mirage, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

37.     Plaintiff Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

38.     That we know of, Toth is depicted in the photos in Exhibit "D" to promote Mirage on its Twitter and Facebook pages. These Images were intentionally altered to make it appear that Toth was either a stripper working at Mirage, that she endorsed Mirage, or that she was otherwise associated or affiliated with Mirage.

39.     Toth has never been employed at Mirage, has never been hired to endorse Mirage, has never been otherwise associated or affiliated with Mirage, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Plaintiff Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness

- 7 -

equipment and is in the process of developing her own line of supplements and fitness clothing.

41. That we know of, Gibson is depicted in the photos in Exhibit "E" to promote Mirage on its Facebook page. These Images were intentionally altered to make it appear that Gibson was either a stripper working at Mirage, that she endorsed Mirage, or that she was otherwise associated or affiliated with Mirage.

42. Gibson has never been employed at Mirage, has never been hired to endorse Mirage, has never been otherwise associated or affiliated with Mirage, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

43. Defendants operates Mirage, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

44. In furtherance of its promotion their promotion of Mirage, Defendants own, operate, and control Mirage's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45. Defendants used Mirage's Facebook, Twitter, and Instagram accounts to promote Mirage, and to attract patrons.

46. Defendants did this for their own commercial and financial benefit.

47. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Mirage, endorsed Mirage, or was otherwise associated or affiliated with Mirage.

- 8 -

48.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Mirage to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

49.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Mirage, and at no point have any of the Plaintiffs ever endorsed Mirage, or otherwise been affiliated or associated with Mirage.

50.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

51.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

52.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

53.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be

assigned, known in the modeling industry at the "term."

55. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

56. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Mirage.

57. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

58. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Mirage.

59. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

60. No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

61. No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Mirage's website, Twitter, Facebook, or Instagram accounts.

62. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

63. Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

- 10 -

64.     Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

**FIRST CAUSE OF ACTION**
**Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

65.     The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Mirage' advertisements.

66.     Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

67.     Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Mirage.

68.     Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

69.     Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Mirage, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Mirage.

70.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Mirage.

71.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Mirage, and the goods and services provided by Mirage.

72.     Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be

determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

73.     Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Mirage, or worked at, sponsored, or approved of Mirage goods, services, or commercial activities.

74.     This was done to promote and attract clientele to Mirage, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

75.     Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Mirage, nor worked at, sponsored, or approved of Mirage' goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Mirage.

76.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Mirage.

77.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Mirage and the goods and services provided by Mirage.

78.     Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Common Law Right of Privacy - Misappropriation)**

79.     Defendants have appropriated each Plaintiffs' likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

- 12 -

80.     Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Mirage' website or related social media accounts as part of Defendants' advertising campaign.

81.     Mirage' website and social media accounts were designed to advertise and attract business to Mirage and generate revenue for Defendants.

82.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

83.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

84.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

85.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Mirage.

86.     At no point did any Defendants ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

87.     Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

88.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of

- 13 -

their Images.

89.     Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

90.     Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

91.     Defendants' operated Mirage' website and social media accounts in order to promote Mirage, to attract clientele thereto, and to thereby generate revenue for Defendant.

92.     As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

93.     Defendants' published Plaintiffs' Images on Mirage' website and social media accounts to create the false impression that Plaintiffs were either strippers working at Mirage, endorsed Mirage, or were otherwise affiliated, associated, or connected with Mirage.

94.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Mirage.

95.     Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

96.     Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead,

- 14 -

or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

97.     Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

98.     Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina and caused injury to the Plaintiffs as complained of herein.

99.     Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

100.     Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Mirage.

101.     Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Mirage.

102.     There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

103.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured,

- 15 -

and each of the Plaintiffs' ability to market herself as a model was injured.

104. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

105. Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

106. Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## FIFTH CAUSE OF ACTION
### (Defamation)

107. As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Mirage to the general public and potential clientele.

108. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Mirage, that they endorsed Mirage, or that they had some affiliation with Mirage.

109. None of these representations were true, and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

110. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Mirage or endorsed Mirage.

111. Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Mirage, had no affiliation with Mirage, had not consented to the use of their Images, and had not been compensated for the use of their Images.

112. In the alternative, Defendants published the Images of Plaintiffs with actual malice,

- 16 -

and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because the Defendants they knew that Plaintiffs were not employed by Mirage, had no affiliation with Mirage, had not consented to the use of their Images, and had not been compensated for the use of their Images.

113.     Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

114.     Defendants' publication of Plaintiffs' Images constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

115.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

116.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

117.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

- 17 -

118. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

119. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

120. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

121. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

122. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

123. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

124. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these

- 18 -

policies, along with federal and North Carolina law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

125. Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

126. Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

127. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

<u>SEVENTH CAUSE OF ACTION</u>
**(Conversion)**

128. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

129. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

130. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>EIGHTH CAUSE OF ACTION</u>
**(Unjust Enrichment)**

131. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Mirage to the general public and potential clientele.

132. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Mirage or endorsed Mirage.

- 19 -

133. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

134. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

135. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Mirage.

136. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

137. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

138. Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

139. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

140. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Mirage, endorse Mirage, or are otherwise affiliated with Mirage, Defendants have not compensated Plaintiffs.

141. Plaintiffs are therefore entitled to reasonable compensation for Mirage' unauthorized use of their Images.

- 20 -

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through tenth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through ninth causes of action;

(c) For an order *permanently enjoining* Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 17th day of November, 2022.

| | |
|---|---|
| /s/ John V. Golaszewski | /s/ Matthew R. Gambale |
| John V. Golaszewski | Matthew R. Gambale |
| New York Bar No. 4121091 | NC Bar No. 43359 |
| THE CASAS LAW FIRM, P.C. | OSBORN GAMBALE BECKLEY & BUDD PLLC |
| 1740 Broadway, 15th Floor | 721 West Morgan Street |
| New York, New York 10019 | Raleigh, North Carolina 27603 |
| (646) 872-3178 | T: 919.373.6422 |
| john@casaslawfirm.com | F: 919.578.3733 |
| *Attorneys for Plaintiffs* | matt@counselcarolina.com |
| | *Local Civil Rule 83.1(d) Attorneys for Plaintiffs* |

- 21 -